**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| FATIMA SALEM, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-1802 |
| | § | |
| HOUSTON METHODIST HOSPITAL, | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

This case is before the Court on Defendant Houston Methodist Hospital's ("Defendant" or "Methodist") Motion for Summary Judgment [Doc. # 36] (the "Motion").[1]  Plaintiff Fatima Salem ("Plaintiff" or "Salem"), appearing *pro se*, filed a Response [Doc. # 38], to which Methodist replied [Doc. # 39].  The Motion is ripe for determination.  After considering the parties' briefing, all matters of record, and the applicable legal authorities, the Court **grants** Defendant's Motion.

---

[1]    Defendant also filed a Motion for Leave to File Summary Judgment [Doc. # 35] ("Motion for Leave").  The Motion for Leave is **granted**.  The Court's scheduling order set the dispositive motions deadline as August 7, 2015 [Doc. # 11].  Defendant filed the Motion on August 21, 2015, two weeks later.  Counsel for Defendant explains that he was unable to take Plaintiff's deposition on the date the parties originally agreed, July 16, 2015, due to Plaintiff's health.  The deposition was rescheduled to July 23, 2015.  Counsel explains he did not receive the transcript until August 6, 2015.  The Court finds that Defendant has shown good cause.

## I.   <u>BACKGROUND</u>

Plaintiff was employed as a nurse by Defendant from June 18, 2001, to August 24, 2012.  Motion, Exh. A ("Salem Deposition") [Doc. # 36-1], at 13:23–24.  She was hired as a "novice RN."  In early 2002 she was promoted to a position categorized as "RN II."  *Id.*, at 17:23–25.  An RN II "is a staff nurse who . . . . provides direct patient care effectively and efficiently to a patient team which may include patients with varied and complex needs."  Motion, Exh. G [Doc. # 36-7].  Physically, the job duties included "a lot of standing and a lot of bending."  Salem Deposition [Doc. # 36-1], at 19:6–7.  Plaintiff worked as a "circulator," which included "running around to do anything [her team] needed, plus documentation."  *Id.*, at 20:2–3.

Plaintiff has suffered from various medical and psychological conditions, including autoimmune disorders, psoriasis and psoriatic arthritis, ADHD, anxiety, and depression.  *See* Salem Affidavit [Doc. # 38], at ECF page 25.  Plaintiff took a 59-day leave of absence from September 23, 2011 to November 20, 2011.  She returned to work on November 21, 2011, but subsequently began another medical leave of absence on April 24, 2012.  Motion, Exh. D [Doc. # 36-4], at ECF page 2.  Plaintiff took these leaves because she was "struggling with illness."  Salem Deposition [Doc. # 36-1], at 24:4–5.

The first period of leave was covered by the Family and Medical Leave Act ("FMLA").  *Id.*, at 30:21–24.  At the beginning of the second period of leave, on April 23, 2012, Plaintiff spoke with Debbie Newkirk, who explained to Plaintiff that she could take six months of short-term disability leave.  Salem Affidavit [Doc. # 38], at ECF page 27.  Later that day, Plaintiff applied for short-term disability benefits from Defendant's provider, CIGNA.  *Id.*  CIGNA initially denied her request.  Plaintiff appealed their decision twice.  While her appeals were pending, Plaintiff "had to struggle without money for 4 months."  *Id.*  On July 24, 2012, Plaintiff underwent a "Functional Whole Body Assessment."  During the assessment she "was emotional and frequently crying and able to perform only a few components of the Assessment.  The assessment was terminated without completion of the first lifting task due to [her] complaints of pain, dizziness, and nausea.  She became emotional, anxious, and unable to continue."  Letter from William Trammel, OT dated July 24, 2012 (the "Assessment") [Doc. # 38], at ECF page 33.  It appears that Plaintiff did not proceed to the remainder of the tasks in the assessment.

Throughout 2012, Defendant maintained a policy that "[a]ll leaves of absence of any kind when combined cannot exceed six (6) months in any rolling twelve (12) month period, measured backward from the date the leave begins."  Motion, Exh. C ("Policy HR 29") [Doc. # 36-3], at ECF page 2.  According to

Policy HR 29, employment would "be terminated if the employee fails to return to work at the end of the approved leave period." *Id.* On August 15, 2012, Gloria Jimenia mentioned to Plaintiff that her employment would be subject to termination on August 24, 2012 under the terms of Policy HR 29 unless she returned to work. Salem Deposition [Doc. # 36-1], at 35:10–14. On August 16, 2012, David Hasha ("Hasha"), Senior HR Generalist/Consultant at Methodist, called Plaintiff about her impending termination. Motion, Exh. D [Doc. # 36-4], at ECF page 2. According to an August 17, 2012 email from Hasha to three other Methodist human resources personnel (Cheri Legendre ("Legendre"), Sheila Coggins ("Coggins"), and Kwameena Edwards Montgomery ("Edwards Montgomery")), Salem was upset because, "[i]n her opinion, the denial of her [short-term disability] benefits has prevented her from completing her treatment plan, thus prolonging [her] recovery. Had she been paid the benefits that she feels she is owed, she would have been able to recover in time to return to work much sooner, thus avoiding the 6 month limit. Thus, she is claiming that terminating her under policy HR 29 is improper as the organization is creating the very situation that prevents her from a timely return." *Id.* He passed on a request from Salem to recalculate the number of days she had been on leave and to see if CIGNA would decide Plaintiff's second appeal of the denial for short-term disability benefits by August 24, 2012. Legendre, a human resources manager at Methodist, responded

with answers to the latter two requests, but did not discuss Plaintiff's concern that application of the 6-month limit was improper in her case.

On August 20, 2012, Plaintiff emailed Hasha to ask what she needed to do to avoid termination of her employment.  Motion, Exh. E [Doc. # 36-5], at ECF page 2.  Hasha replied that "to prevent HR Benefits from proceeding with a termination on Aug 24th, you would have to be cleared by your doctor to return to work prior to the termination.  In order to do this, Gloria [Jimenia] would provide you with a copy of your job description and activity checklist for your Dr. to release you into."  *Id.*  Hasha also explained that Policy HR 29 did not differentiate between types of leave.  *Id.*  Plaintiff replied that evening, explaining she did not understand how she could be terminated while her second appeal was still pending with CIGNA.  Regarding a new medical exam, she wrote, "I can ask the doctor to release me but i don't know if he will bc i did before but they wanted for me to get some relief from all the pain and discomfort..otherwise I be coming back the same way i left or even worse.  But bc I have no choice I need the money & my job I can ask."  *Id.*  Plaintiff did not believe she would actually be able to return to work on August 24, 2012, because she was taking Vicodin, which she considered a risk to patient safety.  Salem Deposition [Doc. # 36-1], at 43:13–17.

On August 21, 2012, CIGNA reversed its prior decisions and granted Plaintiff short-term disability leave through October 22, 2015.  Response, Exh. 4

[Doc. # 38], at ECF page 24; Salem Affidavit [Doc. # 38], at ECF page 27. Plaintiff called Hasha after she heard of CIGNA's decision. Salem Affidavit [Doc. # 38], at 3. Hasha then emailed Coggins, and Edwards Montgomery. He recounted that Plaintiff wanted him "to pass along to HR Leadership . . . that she feels that is [sic] incredibly unfair and inequitable that she be terminated when the reason for her not being able to return to work in a timely manner was due to the fact that she could not undergo treatment b/c she had no income whatsoever. In her opinion, had she received her STD benefits that were due, she would have treated, and able to return to work prior to the 6 month deadline." Response, Exh. 1 [Doc. # 38], at ECF page 19. Hasha also conveyed Plaintiff's request "for an exception to HR 29 as the situation was entirely out of her control and CIGNA's fault for not approving her benefits in a timely manner." *Id.* ("She doesn't understand how the organization can move to terminate her when she was denied the very benefits that she needed to seek medical treatment in order to return to work."). On August 24, 2012, Defendant terminated Plaintiff's employment.

Hasha followed up with Coggins and Edwards Montgomery on August 27, 2012. *Id.* at ECF page 18. Edwards Montgomery responded that she would not provide an exception, but agreed to forward Plaintiff's request to Coggins to see if she felt they could in fact provide an exception. *Id.* On August 30, 2012, Hasha

left Plaintiff a voicemail telling her that Defendant had turned down her request for an exception. Salem Affidavit [Doc. # 38], at ECF pages 27–28.

Following the termination of her employment, Plaintiff's condition worsened. *Id.* at ECF page 28; Salem Deposition [Doc. # 36-1], at 53:19–54:10. She applied for Social Security benefits in November 2012, which were approved on September 25, 2013 and have continued through the present. *See* Motion, Exh. F [Doc. # 36-6], at ECF page 2. The Social Security Administration classified Plaintiff as totally disabled as of September 24, 2011 and began to pay her benefits. Salem Deposition [Doc. # 63], at 63:7–10. Plaintiff also filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Houston District Office, on February 11, 2013. On September 17, 2013, the EEOC issued a determination. It found that Policy HR 29 violates the Americans with Disabilities Act "in that it deprives certain employees of a reasonable accommodation, dispenses with respondent's obligation to engage in an appropriate interactive process and impermissibly relieves [Methodist] of its burden to establish undue hardship as a defense to a request for a reasonable accommodation that would extend a leave beyond six months." Response, Exh. 2 [Doc. # 38], at ECF page 20. With regard to Plaintiff's termination, however, the EEOC was "unable to conclude that the information obtained establishes violations

of the ADA." *Id.*  The EEOC unsuccessfully attempted to assist Plaintiff and Defendant resolve the matter.

Plaintiff filed a Complaint in this Court on June 27, 2014.  She alleges that Defendant discriminated against her on the basis of disability in terminating her employment, failed to accommodate her disability by not providing her with additional unpaid leave from work, and retaliated against her in violation of federal and Texas state law.

Plaintiff's counsel withdrew from representation with leave of the Court on April 17, 2015.  Order [Doc. # 28].  Plaintiff has continued *pro se*.  Defendant has now moved for summary judgment on Plaintiff's claims.

## II.   <u>SUMMARY JUDGMENT LEGAL STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322–23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).  The moving party, however, "need not *negate* the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmovant's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001)).  "A dispute as to a material fact is genuine if the evidence is such that a

9

reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or

would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe.  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13).   The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence.  *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075.  Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* Fed. R. Civ. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara*, 353 F.3d at 405.  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Id.* (internal citations and quotations omitted); *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011).

III.   **ANALYSIS**

The Complaint asserts claims under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, and the Texas Commission on Human Rights Act (the "TCHRA"), Tex. Lab. Code § 21.001 *et seq.*,[2] for discrimination based on a disability, failure to accommodate a disability, and retaliation.

A.   **Disability Discrimination**

Under the ADA, a covered employer must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship."  42 U.S.C. § 12112(b)(5)(A).  The employee bears the responsibility for requesting reasonable accommodations.  *See Griffin v. United Parcel Serv., Inc.*,

---

[2]    The Court analyzes the ADA and TCHRA claims together to the extent possible. *See Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex. App. 2006, pet. denied) ("Because [the TCHRA] seeks to promote federal civil rights policy, it is proper to look to analogous federal precedent.  Accordingly, Texas courts follow federal precedent for guidance when interpreting [the TCHRA]." (citations omitted)); *see also Talk v. Delta Airlines*, 165 F.3d 1021 1024 n.4 (5th Cir. 1999) ("One of the general purposes for which the TCHRA was enacted was to 'provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments.  Texas courts apply analogous federal precedents based on the Rehabilitation Act and the ADA when interpreting the TCHRA with regard to employment discrimination." (citations omitted)).

12

661 F.3d 216, 224 (5th Cir. 2011) (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)).

The ADA also makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees [and] other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To prevail on a claim under the ADA, the plaintiff must first establish a *prima facie* case by showing that (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability."  *EEOC v. LHC Grp.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847 (5th Cir. 1999)); *Tex. Dep't of Family & Protective Servs. v. Howard*, 429 S.W.3d 782 (Tex. App.—Dallas 2014, pet. denied) ("To establish a prima facie case of disability discrimination under [the TCHRA], a plaintiff must show (1) he has a 'disability,' (2) he is 'qualified' for the job, and (3) he suffered an adverse employment decision 'because of his disability.'").

If the employer articulates a legitimate non-discriminatory reason for the adverse employment action, the plaintiff can prevail by producing evidence that the employer's articulated reason for the adverse employment action was pretextual.  *See EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009), *overruled on other grounds by LHC Grp.*, 773 F.3d at 696–97; *Tex.*

13

*Dep't of State Health Servs. v. Rockwood*, 468 S.W.3d 147, 152–53 (Tex. App.—
San Antonio 2015, no pet.) (explaining that Texas state courts follow the federal
burden-shifting approach in evaluating employment discrimination cases (citing
*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)).

Plaintiff's primary claims are that Defendant discriminated against her in
violation of the ADA and TCHRA.  Under case law applicable to both statutes,
Plaintiff has not made a prima facie case because she cannot show that, on or after
April 2012, she was qualified for the RN II position.

### 1.    Disability

"An individual has a disability under the [ADA] if he or she (1) has a
physical or mental impairment that substantially limits one or more major life
activities; (2) has a record of such impairment, or (3) is regarded as having such
impairment."  *Atkins v. Salazar*, 677 F.3d 667, 675 (5th Cir. 2011) (*per curiam*)
(quoting *Stewart v. City of Houston Police Dep't*, 372 F. App'x 475, 477 (5th Cir.
2010) (*per curiam*); *Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 382
(Tex. 2004) ("[T]he [Texas] Legislature in 1993 fully incorporated the ADA
definition of the term 'disability' into [the TCHRA].").  The Complaint, in the
alternative, asserts all three theories of disability.  *See* Complaint [Doc. # 1], at 3,
¶ 5.1 (alleging that Defendant terminated Plaintiff "because of a disability, a
'regarded as' disability, and/or record of disability); *see id.*, at 4, ¶ 6.1 (same).

Plaintiff must show that she has been a "qualified individual" during a relevant period for each of these theories.  The Court assumes without deciding that Plaintiff is disabled.[3]

### 2.    Qualified Individual

An employee is a "qualified individual" under the ADA if she, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8). A plaintiff must therefore either explain how she did not require any change in her employment conditions or point to a reasonable modification of the conditions of her employment that would enable her to fulfill the requirements of her job.[4]

Salem has not shown that she was capable of performing the duties of the RN II position without accommodation at any point following the commencement of her leave in April 2012.  To withstand summary judgment on her ADA and TCHRA disability discrimination claims, she must therefore show that she could

---

[3]    The Social Security Administration's classification of Plaintiff as "totally disabled" is not dispositive of Plaintiff's ADA claims.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999) ("[P]ursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim.").

[4]    Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

perform the duties of the RN II position with one or more reasonable accommodations for her alleged disability.

### 3.    Additional Leave as a Reasonable Accommodation

Plaintiff argues that additional unpaid leave would have been a reasonable accommodation under the circumstances of her case.   She asserts that she requested that accommodation during her August 21 conversation with Hasha.  *See* Response [Doc. # 38], at 8.

There may be circumstances in the Fifth Circuit under which granting an employee additional leave from work would be a reasonable accommodation. *Silva v. City of Hidalgo*, 575 F. App'x 419, 423 (5th Cir. 2014) (*per curiam*) (noting that an employer's "unbudging framework" of terminating employees if they were unable to return to work following expiration of FMLA leave could "violate" the employer's ADA duties).[5]  The Fifth Circuit has consistently stated,

---

[5]    Defendant's citations are inapplicable to this issue.  The EEOC guidelines suggest that a neutral leave policy may still be discriminatory because an employer would not grant an extension of leave even when it would be a reasonable accommodation.    EEOC, No. 915.002, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (Oct. 17, 2002), *available at* 2002 WL 31994335, at *15 & n.50 ("If an employee with a disability needs additional unpaid leave as a reasonable accommodation, the employer must modify its 'no-fault' leave policy to provide the employee with the additional leave, unless it can show that: (1) there is another effective accommodation that would enable the person to perform the essential functions of his/her position, or (2) granting additional leave would cause an undue hardship. Modifying workplace policies, including leave policies, is a form of reasonable accommodation.").    The Supreme Court has held that simply because an

(continued…)

however, that a request for leave of an *indefinite* length does not constitute a valid request for a reasonable accommodation. *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, (5th Cir. 1996) ("[R]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected . . . ." (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)) (alteration in original)); *see also Silva*, 575 F. App'x at 423; *Crossley v. CSC Applied Techs., L.L.C.*, 569 F. App'x 196, 200 (5th Cir. 2014) (*per curiam*); *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 400 (5th Cir. 2012) (*per curiam*); *Reed*

---

(continued…)

employer's policy is "neutral" does not prevent it from being considered discriminatory in application. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 398 (2002) (citing *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 648 (1st Cir. 2000) (requiring leave beyond the amount allowed under the company's own leave policy)).

Defendant has cited Texas state law for the proposition that termination of employment as part of enforcement of a uniform neutral leave policy is not discriminatory treatment. Motion [Doc. # 36], at 10 n.25, 17 n.57 (citing *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 387–89 (Tex. 2005); *Tex. Div.-Tranter, Inc.*, 876 S.W.2d 312, 313 (Tex. 1994); *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Larsen v. Santa Fe Indep. Sch. Dist.*, 296 S.W.3d 118 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Terry v. S. Floral Co.*, 927 S.W.2d 254 (Tex. App.—Houston [1st Dist.] 1996, no writ)). These cases, however, arise from claims for retaliation by an employer after an employee filed a workers' compensation claim. Texas workers' compensation law is in a different title of the Texas Labor Code (Title 5) from the TCHRA (Title 2, Chapter 21). As explained below, Plaintiff's claims cannot succeed under federal law standards, so the Court finds it unnecessary to extend the holding of these cases to the TCHRA where Defendant has cited no case law compelling the creation of such an inconsistency between state and federal laws. *See Talk*, 165 F.3d at 1024 n.4 (noting that the TCHRA was intended to execute the goals of the ADA).

17

*v. Petrol. Helicopters, Inc.*, 218 F.3d 477, 481 (5th Cir. 2000) (*per curiam*); *Bazile v. AT&T-Bell Labs.*, 142 F.3d 1279, 1998 WL 224540, at *2 (5th Cir. 1998) (*per curiam*).

Plaintiff's request for additional leave from work was not a request for a reasonable accommodation under Fifth Circuit authority because she did not provide Defendant with a date on which she anticipated being able to return to work.  The Fifth Circuit considers requests for disability leave without an end-date to be requests for indefinite leave.  *Silva*, 575 F. App'x at 423 ("[The employee] could not (or simply did not) provide an estimate of when she could resume her former job duties except to say that it would be longer than one month in the most optimistic scenario."); *Amsel*, 464 F. App'x at 400 ("The question here is whether [the employee] was qualified at the time his position was eliminated. . . .  [H]e gave [the employer] no indication of when he would again be cleared to return to work.").[6]  Indeed, to date, Plaintiff has not proffered a time since April 2012 that she could have returned to work—either with or without an accommodation.[7]  In

---

[6]    In her deposition, Plaintiff explained, "I didn't know a specific date since the doctor said that until we do another functional capacity test.  He wanted me to see my psychiatrist and get my anxiety under control and then try to do another functional capacity test, which most likely within a month, I would have been able to return to work."  Salem Deposition [Doc. # 36-1], at 38:8–13.

[7]    *Id.*, at 39:6–13 ("Q. '[Y]ou may have been able to complete the test, but you don't know if you would have been able to pass the test.'  A. 'I don't know.  I can't --'  Q. 'It would be speculation if you said you were going to -- you thought you could (continued…)

substance, Plaintiff's request in August 2012 was for additional leave to see if there was a possibility she could recover and return to work sometime in the future. Under Fifth Circuit precedent, this is a request for indefinite additional leave and is not a request for a viable reasonable accommodation.[8]

### 4.    Short-Term Disability Benefits

Plaintiff points to the fact that eventually she was granted short-term disability benefits.  The evidence in the record does not suggest that the receipt of short-term disability benefits would have permitted Plaintiff to return to work. Plaintiff stated in her deposition, "I asked for extra time since my short-term disability approved me [on August 21, 2012, for benefits through] October 20 --

---

(continued…)

pass it.  I mean you just don't know.'  A. 'Yeah.  I can't guess what -- what could have happened.'").  Her deposition testimony is consistent with the results of her July 24, 2012 assessment.  Assessment [Doc. # 38], at ECF page 35 ("Pt is awaiting review of her case.  Hopefully once her anxiety is improved, the FCE could be completed, and pt will be considered for a possible RTW c sedentary duty status.").

[8]    Even if an employee's request for additional leave includes an end-date, the employee also should show a likelihood that she will be able to resume work on that date.  *See Hester v. Williamson County*, No. A-12-cv-190-LY, 2013 WL 4482918, at *8 (W.D. Tex. Aug. 21, 2013) ("[T]he claim that Hester only needed eight more weeks of leave to return to work is inconsistent with the undisputed evidence."); *Pickard v. Potter*, No. Civ. A. 4:01-cv-0375-BE, 2003 WL 21448593, at *6 (N.D. Tex. Mar. 24, 2003) ("As of her termination date, Pickard's doctor stated in letters to the [employer] that Pickard was unable to work at her regular job, and he was unsure when she would be able to work again—although he gave a variety of anticipated dates that Pickard might be able to return to work.").

19

22nd[, 2012], I believe.  I asked if I could at least finish my approved leave."
Salem Deposition [Doc. # 36-1], at 36:5–8.

Plaintiff's request does not amount to a proposal for a legally viable
reasonable accommodation also because there is no evidence that short-term
disability benefits would have successfully improved her condition to the extent
that she could have returned to work with or without a suggested reasonable
accommodation.[9]  *See Gazda v. Pioneer Chlor Alkali Co.*, 10 F. Supp. 2d 656, 673
n.37 (S.D. Tex. 1997) (finding that request for leave was unreasonable because it
assumed successful treatment but the record did not include evidence that course of
treatment was occurring or successful); *Little*, 37 F.3d at 1075 (explaining that a
court will not assume the non-moving party could prove necessary facts to survive
summary judgment in the absence of proof).  Based on the summary judgment
record, the obtaining or the timing of Plaintiff's short-term disability benefits does
not alter the outcome of this case.

---

[9]     Plaintiff states that "Dr. Arturo Rios [would] testify that the termination of
Plaintiff created a more difficult situation, practically, emotionally, and
psychologically, to Plaintiff and her ability to heal from these illnesses."
Response [Doc. # 38], at 15.  Even if Dr. Rios, as a treating physician or counselor
for Plaintiff, is not subject to the rules on expert witnesses because he might have
been able to opine on matters within his scope of treatment of Plaintiff, Plaintiff's
statements are inadmissible hearsay.  She has not offered Dr. Rios' firsthand
records or opinions.  She purports to describe what he has told her.  This testimony
is hearsay.  *See id.* (objecting to Plaintiff's statements regarding Dr. Rios as
inadmissible hearsay).

### 5.    Interactive Process

An employer has a duty to engage in an interactive process with an employee to determine a reasonable accommodation.  *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996) ("[T]he employee's initial request for an accommodation . . . triggers the employer's obligation to participate in the interactive process of determining one.").  "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."  *Cutrera*, 429 F.3d at 112 (citing *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).  "An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended."  *Cutrera*, 429 F.3d at 113; *see also Jenkins v. Cleco Power LLC*, 487 F.3d 309, 316 (5th Cir. 2007) (collecting cases).  However, failure to participate in an interactive process does not—in and of itself—constitute a violation of the ADA.  *See Picard v. St. Tammany Par. Hosp.*, 423 F. App'x 467 (5th Cir. 2011) (*per curiam*) (rejecting argument that failure to engage in interactive process constitutes a per se violation of the ADA); *see also Silva*, 575 F. App'x at 424 n.3.

21

While Defendant's minimal participation in an interactive process with Plaintiff was inappropriate,[10] there is a complete absence of evidence of any possible reasonable accommodation. Defendant's failure to participate meaningfully therefore does not alter the outcome of this case. *See Silva*, 575 F. App'x at 424 ("[E]ven if a genuine issue of material fact exists as to whether the [employer] participated in the interactive process in good faith, its dereliction cannot be said to have *led* to a failure to reasonably accommodate [the employee] because there is no evidence that a reasonable accommodation was feasible.").

### 6. FMLA Leave

Plaintiff also contends that Defendant acted with a discriminatory intent in violation of the ADA in terminating her employment because it counted her FMLA leave against the 180 days of leave permitted under Defendant's leave policy. *See* Response [Doc. # 38], at 9–13. Plaintiff cites *Carmona v. Southwest Airlines*, 604 F.3d 848 (5th Cir. 2010), in which the plaintiff was an employee who had been approved for intermittent FMLA leave but then was terminated for violations of

---

[10]  The email exchanges between Hasha and his supervisors demonstrate a regrettable inflexibility and unresponsiveness on the part of Defendant's human resources personnel.  The emails from Hasha's supervisors appear to summarily reject Plaintiff's suggestions based on their leave policy rather than inquire into whether Plaintiff could have recovered with more treatment or because she began receiving short-term disability benefits. Motion, Exh. D [Doc. # 36-4], at ECF page 2; Response, Exh. 1 [Doc. # 38], at ECF page 18.  Although this inflexibility did not lead to a discriminatory act within the meaning of the ADA in this case, the EEOC Guidelines and federal case law caution against such rigidity.

the employer's attendance policy. *Carmona* is distinguishable, however, because the attendance policy at issue related to attendance lapses, not formal disability leave. *Id.* at 851 ("Under the Agreement, flight attendants accrue points for various types of attendance lapses, such as calling in sick, failing to show up for a flight without advance notice, or failing to report to scheduling."). In *Carmona*, the employee also showed that the job description allowed for flexible schedules that could accommodate his need for intermittent leave. *Carmona* thus demonstrated he was a qualified individual within the meaning of the ADA. *Id.* at 861. Further, he showed that the employer may have had an unwritten practice regarding absences according to which it had been more lenient with other employees than with him. *Id.* at 861–62. In the case at bar, Salem has not shown that intermittent leave would have permitted her to perform the duties of the RN II position. Nor, as she admits, has she shown that Methodist treated similarly situated employees differently. *See* Response [Doc. # 38], at 13–14. The summary judgment record reveals that Defendant was enforcing its leave of absence policy. While, as the Court noted above, Defendant's inflexibility regarding Policy HR 29 may well have been inappropriate, Plaintiff has not shown the Defendant acted against her with discriminatory intent under the ADA. The Court therefore grants

summary judgment in favor of the Defendant on Plaintiff's disability discrimination claims.[11]

**B.    Failure-to-Accommodate Claims**

The Complaint also alleges that Defendant "discriminated against Plaintiff by failing to make a reasonable accommodation for her disabilit(ies)." Complaint [Doc. # 1], at 3, ¶ 5.1 (ADA claims); *id.*, at 4, ¶ 6.1 (TCHRA claims). The ADA and TCHRA formulations of the failure-to-accommodate claim are substantially similar. *See Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013) ("[A] plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim [under the ADA]: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."); *Tex. Dep't of State Health Servs. v. Rockwood*, 468 S.W.3d 147, 154-55 (Tex. App. 2015) ("In order to establish a [TCHRA] claim based on an employer's failure to provide a reasonable accommodation, the plaintiff must show: (1) she is an individual with a disability; (2) the employer had notice of the disability; (3) with reasonable accommodations she could perform the

---

[11]    The Court need not address the remaining elements of Plaintiff's ADA discrimination claim.

P:\ORDERS\11-2014\1802MSJ.docx   151030.1631

essential functions of the position; and (4) that the employer refused to make such accommodations.").

The ADA and TCHRA both require that a plaintiff show the existence of a reasonable accommodation that would permit her to perform the duties of her job. For reasons explained above, Salem has not shown there was a reasonable accommodation that would have enabled her to return to work, and she therefore cannot succeed on her failure-to-accommodate claims. The Court therefore must grant summary judgment in favor of the Defendant on these claims.

### C.     Retaliation Claims

The ADA and the TCHRA prohibit an employer from retaliating against an employee who seeks to exercise her rights under these laws. 42 U.S.C. § 12203; TEX. LAB. CODE § 21.055. "The analytical framework for a retaliation claim is the same [burden-shifting framework] as that used in the employment discrimination context." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). "To establish a prima facie case of retaliation under the ADA or Title VII, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist*, 730 F.3d at 454; *see also Brewer v. College of the Mainland*, 441 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (providing identical elements for

retaliation claim under TCHRA). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist*, 730 F.3d at 454 (citations omitted). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996).

The Court's conclusions on Plaintiff's disability discrimination claim foreclose Plaintiff's retaliation claims as well.[12] The Court assumes Plaintiff has

---

[12]    *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 278 (5th Cir. 2014) ("[Plaintiff] argues that her retaliation claims should not have been dismissed because [Defendant] did not disclose the grounds on which it sought summary judgment as to those claims. She further argues that the district court did not provide sufficient notice that it would consider dismissing her retaliation claims *sua sponte*. . . . Because [Defendant] argued below that [Plaintiff's] position was eliminated due to a [reduction in force], we conclude that Cohen had sufficient notice to respond and, in fact, did."); *see also Atkins*, 677 F.3d at 680 (finding that it was appropriate for district court to grant summary judgment on affirmative defense where, *inter alia*, Defendant made repeated reference to facts relevant to the . . . defense in its opening brief"); *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807–08 (7th Cir. 2000) (affirming summary judgment on seven claims where motion for summary judgment did not explicitly enumerate these claims, but all seven claims involved the same dispositive factual issue).

alleged and presented evidence to establish a prima facie case of retaliation. The evidence of record establishes without contradiction that Plaintiff could not resume the RN II duties within Defendant's 180-day leave policy. Thus, Defendant has presented a reason other than retaliation for engaging in a protected activity for Defendant to terminate Plaintiff's employment.

The burden then shifts back to Plaintiff to show that Defendant's reason was merely a pretext for retaliation and that her termination would not have occurred "but for" her engagement in a protected activity. *See Feist*, 730 F.3d at 454. The evidence in the summary judgment record is uncontradicted that Defendant had started the process of terminating Plaintiff's employment began before Plaintiff engaged in any even arguably protected activity. Defendant's personnel simply applied their leave policy with no attention to the specific circumstances of Plaintiff's situation.[13] That finding precludes Plaintiff from showing that Defendant terminated her employment specifically in retaliation against her for a protected activity. There is thus no "conflict in substantial evidence" regarding

---

[13]   Plaintiff has argued Defendant's personnel acted maliciously in including her FMLA leave in the calculation of the date on which she would have accrued 180 days of leave under HR 29. That policy on its face, however, includes FMLA leave among the types of leave subject to the 180-day limitation. *See* Policy HR 29 [Doc. # 36-3], at 2. The inclusion of the FMLA leave, as noted above, is evidence that Defendant was applying its leave policy as written.

Defendant's motives.  Accordingly, the Court must grant summary judgment in favor of Defendant on the retaliation claims.

## IV.    <u>CONCLUSION AND ORDER</u>

Based on the foregoing, the Court concludes that Plaintiff Fatima Salem did not raise an issue of material fact regarding her qualifications for the RN II position.  Plaintiff therefore did not suffer discriminatory treatment or retaliation within the meaning of the ADA and TCHRA.  Accordingly, it is hereby

**ORDERED** that Defendant Houston Methodist Hospital's Motion for Leave to File Summary Judgment [Doc. # 35] is **GRANTED**.  It is further

**ORDERED** that Defendant Houston Methodist Hospital's Motion for Summary Judgment [Doc. # 36] is **GRANTED** and Plaintiff's claims must be **DISMISSED with prejudice**.

A separate Final Judgment will be entered.

SIGNED at Houston, Texas this 30th day of **October, 2015**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\11-2014\1802MSJ.docx  151030.1631